# IN THE COURT OF APPEALS OF IOWA

No. 13-1439
Filed July 30, 2014

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**DESHAUN ALVIN SMITH,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Black Hawk County, James D. Coil,

District Associate Judge.


        A defendant appeals his conviction for third-degree criminal mischief,

challenging the jury instructions, the sufficiency of the evidence, and the

effectiveness of his counsel.  **REVERSED AND REMANDED.**


        Mark C. Smith, State Appellate Defender, and Melinda J. Nye, Assistant

Appellate Defender, for appellant.

        Thomas J. Miller, Attorney General, Katie Fiala, Assistant Attorney

General, Thomas J. Ferguson, County Attorney, and Jeremy Westendorf,

Assistant County Attorney, for appellee.


        Considered by Vogel, P.J., and Doyle and Mullins, JJ.

**MULLINS, J.**

DeShaun Smith appeals his conviction for third-degree criminal mischief, in violation of Iowa Code section 716.5 (2013).  He claims on appeal that the court erred in instructing the jury to consider the "highest value" of the property rather than the cost to repair, replace, or restore the property when determining the degree of the crime.  He claims there is insufficient evidence to support his conviction for third-degree criminal mischief because the damage was not in excess of $500.  Finally, he claims counsel was ineffective in failing to object to hearsay testimony from the victim regarding a repair quote she received.

**I.  Background Facts and Proceedings.**

After midnight on April 5, 2013, Chrystiana Williams-Johnson heard a noise outside of her apartment.  She was awake and on the phone with a friend when she looked out her bedroom window and saw someone break out the driver's side windows on her car.  She yelled through an open window, and the person looked up at her.  She recognized the person as DeShaun Smith, her former boyfriend and the father of her child.  She ran downstairs, and saw Smith get into a black SUV and drive away.

She contacted police who responded to the call.  Photos were taken of the damage to her vehicle, which included the two driver's side windows and the front windshield.  Williams-Johnson was transported to the police station to provide a statement.  When she returned home, she eventually went to sleep. She got up the next morning to find that her vehicle had been further damaged.

The back windshield was damaged, her back two tires were flat, and the driver's side of her car had been keyed.

Smith was eventually arrested, and the case proceeded to trial on August 6, 2013. The jury returned a verdict of guilty to third-degree criminal mischief after answering a special interrogatory finding the "value of the property exceeded $500 but did not exceed $1,000." Smith was sentenced to 180 days in jail with all but seven days suspended, he was fined, and he was placed on probation for a period of twelve to twenty-four months. He now appeals.

## II. Scope and Standards of Review.

We review a challenge to a jury instruction for correction of errors at law. *State v. Becker*, 818 N.W.2d 135, 140 (Iowa 2012). "When the error in giving or refusing to give a jury instruction is not of a constitutional dimension, 'we presume prejudice and reverse unless the record affirmatively establishes there was no prejudice.'" *Id.* at 141 (citation omitted). "[P]rejudice will be found where the information given unquestionably had a powerful and prejudicial impact on the jury or where the instruction could reasonably have misled or misdirected the jury." *Id.*

We review Smith's challenge to the sufficiency of the evidence also for the correction of errors at law. *See State v. Chang*, 587 N.W.2d 549, 462 (Iowa 1998). We will uphold the verdict if it is supported by substantial evidence. *Id.* Evidence is considered substantial if it would convince a rational trier of fact of the defendant's guilt beyond a reasonable doubt. *State v. Taylor*, 689 N.W.2d 116, 130–31 (Iowa 2004). We consider all the evidence in the light most

favorable to the State including all inferences and presumptions that may be fairly and reasonably deduced from the record. *Id.*

Finally, we review Smith's ineffective-assistance-of-counsel claim de novo as it implicates his Sixth Amendment right to counsel. *See State v. Clay*, 824 N.W.2d 488, 494 (Iowa 2012). While we normally preserve ineffective-assistance claims for postconviction proceedings, we will resolve the claims on direct appeal where the record is adequate to address the claim. *Id.*

## III. Jury Instruction.

Smith argues on appeal the court should not have given the jury an instruction which read: "The value of property means its highest value by any reasonable standard at the time of the damage. Reasonable standard includes, but is not limited to, the property's actual value, its replacement value, or its market value within the community." This definitional instruction mirrors the "value" instruction from the uniform criminal jury instructions on theft and fraudulent practices, except for the changing of the word "theft" to "damage." Its statutory support comes from Iowa Code section 714.3,[1] which deals with the value of stolen property.

There is no "value" definition in the criminal mischief statutes, which define criminal mischief as, "Any damage, defacing, alteration, or destruction of property . . . when done intentionally by one who has no right to so act." Iowa Code § 716.1. The degrees of criminal mischief are determined by "the cost of

---

[1] Iowa Code section 714.3 provides in part: "The value of property is its highest value by any reasonable standard at the time that it is stolen. Reasonable standard includes but is not limited to market value within the community, actual value, or replacement value."

replacing, repairing, or restoring the property that is damaged, defaced, altered, or destroyed." *See id.* §§ 716.3–.6 (outlining the various degrees of criminal mischief in relation to the cost to repair, replace, or restore the damaged property). Smith contends it was error to give the value-of-the-property instruction in this case because he was not charged with theft but criminal mischief, an offense for which the critical determination is not the value of the property but the cost to repair, replace, or restore the property.

In defending its request to include the value-of-the-property instruction, the State asserted at trial that because of the different valuations that were given by the victim—the quote she had received versus the amount of money she spent to repair her vehicle—the court needed to instruct the jury on how to identify the value of the damaged property. The State noted the victim obtained replacement parts from a junkyard and delayed fixing the vehicle because she could not afford the quoted repair estimate she received. The financial position of the victim, the State contended, should not matter or change the level of the offense of which the defendant can be convicted. In deciding to give the instruction to the jury, the district court noted it was a correct statement of the law, having been taken from the uniform theft instructions. The court concluded the circumstances of the case, as testified to by the victim, as well as the arguments of the State made it proper to give the instruction.

On appeal, the State claims the instruction is proper because it ensures a defendant is held responsible for the full value of his conduct. The State asserts the victim is only compensated as a result of a restitution hearing, which is not

affected by the degree of the criminal offense for which the defendant was convicted. Therefore, there is no risk of a windfall to the victim because the victim gains nothing when a defendant is convicted of a higher degree of the crime at issue. The State also argues that while this instruction states the value of the property is the "highest value," the instruction also says it should be the highest value by any "reasonable standard," which includes the property's actual value, its replacement value, or its market value.

Williams-Johnson testified she contacted someone for an estimate to replace the windows. She was told it would be $500 to replace the front and back windshields with new glass. This estimate did not include replacing the two driver's side windows. She did not have the money at that time, so the car was left in the damaged state for two to three months. She then was able to save up enough money to obtain the front and back windshields from a junkyard and paid to have them installed. She also purchased used tires so that she could drive the vehicle. She waited to receive another paycheck before she had the side windows replaced.

The State presented evidence of what she paid for the front and back windshields—$96.30 to the junkyard for the glass and $140 to have the glass installed for a total of $236.30. Williams-Johnson then testified it cost her $25 for each of the side windows and an additional $30 for each window to be installed, for a total of $110 for the side windows. Finally, she testified to paying $40 to replace the two damaged tires. She also testified she did not obtain an estimate to fix the paint on the side of the car because she knew she could not afford to fix

the key damage. She testified the back windshield was not like it was before the damage because there are now wires that hang out of the side of it. On cross-examination she testified that a friend used his roadside assistance program to have her vehicle towed. She could not remember the cost but testified a regular tow was around $40 or $45.

In addition to the value-of-the-property instruction challenged on appeal, the court instructed the jury that it must determine the degree of criminal mischief involved in the case. The jury was instructed they must "find the State proved beyond a reasonable doubt the cost of repair or replacement of the property destroyed, damaged, defaced, or altered." The court then instructed on the different degrees of criminal mischief:

> 1. Criminal Mischief in the Fifth Degree occurs when the cost of replacing or repairing the property is $200 or less.
> 2. Criminal Mischief in the Fourth Degree occurs when the cost of replacing or repairing the property is more than $200 but not more than $500.
> 3. Criminal Mischief in the Third Degree occurs when the cost of replacing or repairing the property is more than $500 but not more than $1,000.

The jury was asked to check the blank on the verdict form to indicate the degree of criminal mischief. The verdict form stated:

> ___  The value of the property exceeded $500 but did not exceed $1,000.
> ___  The value of the property exceeded $200 but did not exceed $500.
> ___  The value of the property did not exceed $200.

The jury checked the top blank.

The language used on the jury verdict form appears to be incongruous with the instruction setting out the degrees of criminal mischief. The court

instructed the jury on the degrees of criminal mischief based on the cost to repair or replace the property but asked on the jury verdict form for the jury to determine the "value of the property." The challenged instruction is the only place where the jury was provided a definition of what the "value of the property" means— "The value of property means its highest value by any reasonable standard at the time of the damage. Reasonable standard includes, but is not limited to, the property's actual value, its replacement value, or its market value within the community."

"In a criminal case, the district court is required to instruct the jury as to the law applicable to all material issues in the case." *Becker*, 818 N.W.2d at 141. Instructions do not need to mirror the precise language of the applicable statute, but must correctly state the law. *Id.* The pertinent fact question for the jury to determine was the cost to repair or replace the property, not the actual value or market value of the property as instructed. *Compare* Iowa Code §§ 716.3–.6 *with* § 714.3. Because the legislature expressly defined "value" for purposes of theft, the value-of-the-property instruction is pertinent to cases involving theft or fraudulent practices where the property at issue has been taken or misappropriated. In order for the court to determine the seriousness of the offense, and the corresponding punishment, the jury must determine what that property was worth at the time it was taken or misappropriated. In contrast, in criminal mischief cases the property is not missing but is damaged. The seriousness of the offense, as legislatively mandated, depends not on the value of the property that has been damaged but on the cost to repair, replace, or

restore that property to its condition immediately before the crime occurred. Thus, we conclude the value-of-the-property instruction was not a correct statement of the law applicable to this case and should not have been given to the jury.

Next, we must determine whether Smith suffered prejudice as a result of the court giving this jury instruction. *See Becker*, 818 N.W.2d at 141 ("Error in giving or refusing to give a particular instruction warrants reversal unless the record shows the absence of prejudice."). Prejudice will be found where it sufficiently appears "that the rights of the complaining party have been injuriously affected by the error or that he has suffered a miscarriage of justice." *State v. Hanes*, 790 N.W.2d 545, 550 (Iowa 2010). This test has been met where the improperly admitted information "unquestionably had a powerful and prejudicial impact on the jury" or where the instruction "could reasonably have misled or misdirected the jury." *Id.* at 551 (internal quotation marks and citations omitted).

Smith insists that he suffered prejudice because the value-of-the-property instruction misled or misdirected the jury. He argues the State emphasized the "highest value" language in its closing argument to get the jury to accept the higher estimate Williams-Johnson received to replace the front and back windshields rather than what she spent to repair the damage. He claims if the jury would have been correctly instructed, it might have disregarded this higher estimate as unreasonable and used only the cost Williams-Johnson incurred in

repairing her vehicle—a total of $386.30[2]—which places the offense in the fourth degree of criminal mischief, not the third degree. *See* Iowa Code §§ 716.5(1)(a), .6(1)(a).

The State insists Smith did not suffer prejudice because the value-of-the-property instruction told the jury "that the value they placed on the damage to the car had to be 'reasonable.'" Because the repair work Johnson-Williams could afford did not place the vehicle in the same condition it was in immediately prior to the damage—she claims the repaired back windshield had disconnected wires hanging down which did not exist prior to the damage—the State argues the jury could have reasonably concluded that the lower estimate did not entirely reflect the value of the damage caused by Smith. The State misses the point; the jury was not asked in the verdict form to determine the cost of repair but to determine the "value of the property." Because we conclude the challenged instruction along with the verdict form "could reasonably have misled or misdirected the jury," we find Smith suffered prejudice as a result and is entitled to a new trial. *See Hanes*, 790 N.W.2d at 551.

## IV.  Sufficiency of the Evidence.

Smith also claims the State offered insufficient evidence to prove his identity as the person who caused the damage to the rear windshield, the tires,

---

[2] This amount includes $236.30 for the replacement of the front and back windshields, $110 for replacement of the side windows, and $40 to replace the two damaged tires. We did not include an amount for the tow of the vehicle as Williams-Johnson could not remember what amount, if any, she paid for this service and testified only to the "regular" amount of a tow. It also does not add any amount for the damage done to the paint as a result of being keyed as Williams-Johnson did not obtain a repair estimate for this damage or have the damage repaired.

and the side of the vehicle. He asserts that while Williams-Johnson testified she saw him do damage to her front windshield and side windows, it was mere speculation that he was the one that broke the back windshield, deflated the tires, and keyed the side of the car. Because he claims there is not sufficient evidence to connect him to this additional damage, he asserts the cost to repair these items should not be considered in determining the degree of criminal mischief, and therefore, there is insufficient evidence he committed criminal mischief in the third degree.

The State claims Smith did not preserve error on his sufficiency claim because he did not make an adequately specific motion for judgment of acquittal at the time of trial. At the close of all the evidence defense counsel made a motion for judgment of acquittal stating,

> We believe that even if the court views the evidence in the light most favorable to the State that there has been any question as to whether or not Mr. Smith was the person who committed the offense here has been erased and is not necessary to submit the case to a jury.

To challenge the sufficiency of the evidence on appeal, "[t]rial counsel is required to make a specific objection in his or her motion for judgment of acquittal in order to preserve error." *State v. Ross*, 845 N.W.2d 692, 700 (Iowa 2014). While counsel did not confine his challenge to the lack of evidence to prove Smith committed the additional damage, he did challenge the evidence to prove Smith committed any of the damage. We therefore find that counsel adequately preserved error on this sufficiency claim as he identified the element of the offense being challenged on appeal—the identity of the perpetrator. *See State v.*

*Schories*, 827 N.W.2d 659, 664 (Iowa 2013). Even if error was not preserved, Smith raises the claim as an ineffective-assistance claim, which requires us to consider the merits of his claim on appeal. *See id.* at 664–65.

Williams-Johnson testified she saw Smith break the driver's side windows and the front windshield was also damaged. She asserted she was in a custody dispute with Smith over their child and had a rocky relationship with him. She admitted on cross-examination that the two had prior altercations and that she was granted a deferred judgment as a result of her plea of guilty to criminal mischief for breaking out a window in the house Smith shared with his girlfriend. This incident occurred shortly before the incident involved in this case. Officer Watson, who responded to Williams-Johnson call, testified he tried but was unable to locate Smith the night of the incident after taking Williams-Johnson's statement. Smith's girlfriend testified for the defense that Smith was with her at the house all night and did not leave. While there is no direct evidence Smith caused the additional damage, like the eye-witness testimony from Williams-Johnson regarding the initial damage, we find the circumstantial evidence was sufficient, when viewed in the light most favorable to the State, to establish Smith caused the additional damage to Williams-Johnson's car. *See State v. Brubaker*, 805 N.W.2d 164, 172 (Iowa 2011) ("Circumstantial evidence is equally probative as direct evidence for the State to use to prove a defendant guilty beyond a reasonable doubt.").

Smith's final claim on appeal is that his attorney was ineffective in failing to object to hearsay testimony from Williams-Johnson regarding the repair estimate

she received to replace the front and back windshields. Because we are remanding this case for a new trial in light of the instructional error, we need not address this claim. *See Hanes*, 790 N.W.2d at 557 (declining to address an ineffective-assistance claim where the case was remanded for a new trial on other grounds and the alleged error was not likely to reoccur).

## V. Conclusion.

We find the circumstantial evidence was sufficient, when viewed in the light most favorable to the State, to establish Smith caused the additional damage to Williams-Johnson's car. However, we reverse and remand the case for a new trial because we conclude the court erred in giving the jury the value-of-the-property instruction that was not a correct statement of the law applicable to this case and Smith suffered prejudice as a result.

**REVERSED AND REMANDED.**